**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CATHERINE LOUISE AUSTIN, | Case No. 1:12-cv-728 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Catherine Austin filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for Disability Insurance Benefits ("DIB") in June of 2009,[1] alleging disability due to depression, with an onset date of September 19, 2000. Plaintiff was insured for benefits only through December 31, 2002. Therefore, the relevant time

---

[1] Plaintiff also filed a claim for Supplemental Security Income ("SSI") but that claim is not at issue in this appeal.

1

frame for purposes of this appeal is Plaintiff's disability status for a twenty-seven month period between September 2000 and December 31, 2002.

After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing was held in March 2011, at which Plaintiff was represented by counsel. At the hearing, ALJ Paul Yerian heard testimony from Plaintiff, her husband, and a vocational expert. On April 21, 2011, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled prior to January 1, 2003.

Plaintiff was 47 years old on her alleged disability onset date. She graduated from high school, and performed secretarial work for a small company for more than 20 years, through the late 1990's, until she lost that job a couple of years prior to her disability onset date. Plaintiff and her husband have been married since 1978. (Tr. 43).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the severe impairment of major depressive disorder, but that Plaintiff's mental impairment did not alone, or in combination, meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 prior to December 31, 2002. (Tr. 14). Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of work at all exertional levels, limited only by the following non-exertional limitations:

> [S]he could have performed simple tasks in a calm, consistent work setting without fast pace that did not require more than superficial contact with others.

(*Id.* at 15). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 18-19). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to either DIB or SSI. (Tr. 19).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues generally that the ALJ erred in his assessment of Plaintiff's RFC during the relevant period, and that the non-disability finding is not supported by substantial evidence. More specifically, Plaintiff contends that the ALJ erred: (1) by improperly crediting the evaluations of non-examining state agency consultants over Plaintiff's treating psychiatrist and therapist; and (2) by improperly evaluating Plaintiff's credibility.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her

4

past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. Specific Errors

#### 1. Consulting versus Treating Medical Sources

The ALJ found that Plaintiff suffered from "severe" depression during the relevant disability period, but determined that Plaintiff's mental impairment did not render her disabled prior to 2003. Plaintiff does not challenge the ALJ's conclusion that Plaintiff's depression was not severe enough to meet or equal any listing, but argues that her depression was nevertheless disabling during the relevant period, as suggested by the opinion of her treating psychiatrist. Plaintiff argues that the ALJ erred by giving "great weight" instead to the assessment of consulting psychologist Todd Finnerty, Psy.D., and to the affirmance of that opinion by Steven Meyer, Ph.D.

Plaintiff claims that the ALJ should instead have given controlling weight to the opinion of Geraldine Wu, M.D., under the "treating physician rule." The relevant

5

regulation provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).

The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> . . . these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires "the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996). In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion. These factors include, but are not limited to: "the length of the treatment relationship

6

and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(c)(2). "[A] finding that a treating source medical opinion...is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p).

The amount of medical evidence in this case is not overwhelming, consisting of just nine exhibits. Six of those exhibits are from Plaintiff's psychiatrist, Dr. Wu, or from her therapist, a licensed social worker. Dr. Wu completed a mental health RFC on April 19, 2010, identified as in the record as Exhibit 1F,[2] that opined that Plaintiff had "poor" abilities in virtually all work-related areas. The vocational expert testified that if he fully incorporated Dr. Wu's assessment into Plaintiff's RFC, Plaintiff would not have been able to work.

Plaintiff complains that the ALJ did not provide "good reasons" for rejecting Dr. Wu's mental RFC assessment, as required by the regulatory framework and the treating physician rule. *See* 20 C.F.R. §404.1527(c)(2); *accord Blakley*, 581 F.3d at 406-407; Soc. Sec. Rul. 96-2p. The undersigned disagrees, concluding that the ALJ provided good reasons in explaining why Dr. Wu's opinion was not entitled to controlling weight, because it was not well-supported or consistent with other evidence limited to the

---

[2]Much of Exhibit 1F is comprised of clinical notes from Dr. Wu that post-date Plaintiff's last insured date by many years, which records are largely irrelevant to Plaintiff's disability prior to December 31, 2002.

7

relevant disability period, but instead focused on Plaintiff's more recent psychiatric condition.

> The ALJ discussed Dr. Wu's opinions as follows:
>
> [I]n December 1999, Dr. Wu assessed the claimant Global Assessment of Functioning (GAF) scores of 70 or higher, which indicate some mild symptoms, but generally functioning well (Exhibit 1F/8). In fact, during her treatment of the claimant, Dr. Wu generally assessed the claimant GAF scores ranging from 60 to 70 (*Id.* at 12, 13, 14, 17, 9F/2, 7, 11, *for example*). Dr. Wu described the claimant as "neat, clean, alert [and] cooperative" and noted that she had good insight and judgment (Exhibit 1F/2).

(Tr. 17, italics original). In determining the weight to be given to Dr. Wu's mental RFC opinions, the ALJ explained:

> Less weight is given to Geraldine Wu, M.D. Dr. Wu completed a Mental RFC Assessment dated April 19, 2010 in which she opined that the claimant has a poor ability to make occupational adjustments, performance adjustments, and most personal-social adjustments (Exhibit 5F/1, 2). Dr. Wu is a treating source … A treating source opinion may be entitled to controlling weight where it is well-supported by and not inconsistent with the objective medical evidence. Here, I find that Dr. Wu's opinion is not entitled to such deference.
>
> Specifically, Dr. Wu opined that the claimant has difficulty negotiating basic activities of daily living and is able to function with minimal stress only (Id. at 2). She opined that the claimant cannot negotiate any job-related work issue and is unable to talk to others without crying and becoming agitated (*Id.* at 3). More recent documents, including 9F, [do] not support the limitations set forth in this assessment. Finally, the doctor makes no distinction as to the relevant time periods covered by [her] assessment. While the claimant's mental condition may have deteriorated in recent years, the objective evidence simply does not support the presence of such extensive limitations existing on or before the date she was last insured for these benefits.

(Tr. 18).

Dr. Wu has treated Plaintiff for over a decade at this point, but because Plaintiff's insured status expired on December 31, 2002, many of that physician's clinical records are irrelevant to the issue of whether Plaintiff was disabled during the period at issue here. The records from Dr. Wu that are most relevant are: (1) the mental RFC assessment completed by Dr. Wu on April 19, 2010, which purports to be an assessment of the "period prior to 12/31/2002 *to ongoing*." (Tr. 234, Exhibit 5F, emphasis added); (2) Dr. Wu's original diagnostic assessment dated December 4, 1999 (Tr. 197-200, Exhibit 1F); (3) a letter dated March 12, 2011 (Tr. 240, Exhibit 7F); and (4) Dr. Wu's clinical records from the relevant insured period, or dates relatively close to that period of time. (*See generally* Tr. 268-207, Exhibit 9F). In addition to Dr. Wu's records, Plaintiff submitted office treatment records from her therapist, Emily Bart, LISW (Tr. 269-282, Exhibit 8F) that generally correspond with the claimed disability period.

Examination of Dr. Wu's records, and of Ms. Bart's clinical notes, reveals no error in the ALJ's rejection of Dr. Wu's extreme limitations. As indicated by those records, Plaintiff first sought mental health treatment in December 1999, approximately nine months prior to her alleged disability onset date in September 2000. In Dr. Wu's original assessment, Dr. Wu noted that Plaintiff was a "woman who has done well all her life," but who had experienced a series of family-related traumas since losing her job two and a half years previously. (Tr. 198-199). She assessed Plaintiff's Global Assessment of Functioning ("GAF") score as ranging from 70 to 80 at that time, reflecting only transient symptoms with no more than slight impairment in social and occupational functioning. (Tr. 200).

Plaintiff asserts that Dr. Wu's March 12, 2011 letter explains away the relatively high GAF scores reflected throughout the relevant time period. As the ALJ specifically noted, GAF scores within the relevant time period were consistently 60 to 70 or higher, reflecting only mild symptoms. Contrary to Plaintiff's position, however, all of the evidence on which Plaintiff relies supports rather than undermines the ALJ's rejection of Dr. Wu's opinions, at least insofar as those opinions purport to relate to the pertinent disability time frame.

First, the 2010 mental RFC completed by Dr. Wu clearly emphasizes her patient's current status, as it is written entirely in the present tense, and notes the relevant time period of evaluation as, somewhat vaguely, the "period prior to 12/31/2002 *to ongoing.*" (Tr. 234, Exhibit 5F, emphasis added). Given that the RFC purports to cover a period of ten and a half years, including close to nine years that fell *after* the expiration of Plaintiff's insured status, it was not error for the ALJ to discount the RFC on that basis alone.

Dr. Wu's subsequent letter also supports the ALJ's decision not to give Dr. Wu's opinions controlling weight. In that letter, Dr. Wu strongly connects her opinions to Plaintiff's recent psychiatric history rather than her symptoms prior to 2003. Dr. Wu explains, evidently in response to counsel's query about Plaintiff's relatively high GAF scores throughout the decade of treatment,[3] that she has "not had the chance to change the GAF rating as diligently as I should have," and that she would like to amend

---

[3] As Plaintiff points out, GAF scores are not intended to correspond precisely with work abilities, and an ALJ is not required to rely upon a low GAF score as substantial evidence of disability. *See Howard v. Com'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Nevertheless, Sixth Circuit case law does not prohibit an ALJ from reviewing a claimant's GAF scores when evaluating the record as a whole.

her clinical opinion to reflect a GAF score of "45 *for the last 18 months*." (Tr. 240, emphasis added). As Defendant points out, Dr. Wu's silence on the earlier records strongly implies that those earlier GAF scores were accurate.[4] In the same 2011 letter, Dr. Wu emphasizes Plaintiff's "deterioration over the last 3 years," with particular reference to "the last year or so." (*Id.*). Last, the ALJ determined that Dr. Wu's opinions were wholly inconsistent with the clinical records from the relevant disability time period, both in terms of Plaintiff's earlier GAF scores, and in terms of their content. The undersigned agrees.

By citing to specific pages on which high GAF scores were noted, and to Exhibit 9F as whole, the ALJ made clear that he had reviewed the most relevant clinical notes. Plaintiff fails to cite to any specific records from that same time period which could amount to substantial evidence that is contrary to the ALJ's opinion.

Having reviewed the same records, the undersigned finds the existence of substantial evidence to support the ALJ's RFC determination that Plaintiff was not disabled during the 27-month time frame at issue, both in Dr. Wu's clinical notes, and in the notes of her therapist. For example, although there are certainly records where Dr. Wu recorded her general observations that that Plaintiff was not doing well, many other records from her routine 15-minute medication management visits reflect a more positive outlook, including many references to a fairly active life. *See, e.g.*, Tr. 274 ("doing better," doing more flower arrangements, meeting with Chamber of Commerce

---

[4] GAF scores from 2003 and 2004, as noted by the ALJ, were consistently within the "mild" range, with one score in April 2004 as high as 85. Although the undersigned failed to locate GAF scores within the relevant time period, Dr. Wu's clinical notes from that period would not appear to support a significantly lower GAF score, or a finding of disability.

11

contacts); Tr. 275 ("doing better"); Tr. 278 ("doing a little better"); Tr. 280 ("not doing as badly…not having panic attacks" but "is tired."); Tr. 281 (does not "feel panicky anymore," and is "doing slightly better"); Tr. 286 ("Medicine is helping somewhat"); Tr. 287 ("taking care of her parents," taking them to hospital and other appointments); Tr. 290 (reference to "back sliding" on a recent trip to Colorado); Tr. 291 ("doing some sales representative work" which takes "a lot of my time."); Tr. 292 ("doing better," despite "disappointing" business issue); Tr. 293 ("have not had any panic attacks" despite not being able to relax); Tr. 294 ("parts of my life [are] really good," referring to argument with spouse over her attending party alone, where she lost track of time while dancing); Tr. 295 ("slightly better");  Tr. 297 ("new flower business out of my home," "signed up for a course in floral design," expressing plan to take additional business course); Tr. 299 ("patient was doing really well" until an upsetting encounter with her gynecologist); Tr. 300 (patient "is doing well…working with a nutritionist…and working out with a personal trainer also."); Tr. 301 ("doing a lot better"); Tr. 302 ("not feeling as panicky," "had some plastic surgery," which she "is happy with").  Notes dating to 2003, close to the relevant time period, continue to portray an individual whose depression, despite being chronic in nature, was not necessarily disabling.  See Tr. 270 ("patient doing better"); Tr. 264, (not looking forward to upcoming trip to Florida, but still attending art class); Tr. 268, (good opportunities to exhibit her art work at Pendelton Hall and to work as a designer at Clousson's).

As a social worker, Plaintiff's therapist is not considered an acceptable medical source.  See 20 C.F.R. 404.1527(a)(2).  Although Ms. Bart did not offer any specific

12

opinions or diagnosis, it is worth noting that despite occasional comments that Plaintiff felt "overwhelmed," many other clinical notes support the ALJ's conclusion that Plaintiff's depression was not disabling prior to December 31, 2002. *See, e.g.*, Tr. 242 ("doing better"); Tr. 243 (reference to Plaintiff's positive interactions with others in playing golf, taking photography course, and getaway vacation); Tr. 248 ("doing well w/ work which is a distraction for her"); Tr. 250 (conflict while playing golf with her husband); and Tr. 253 ("feeling better exercising, doing 'beauty things'").

As part of the same assertion of error, Plaintiff contends that the ALJ failed to scrutinize the opinions of the two consulting psychologists under 20 C.F.R. §404.1527(c), which generally require that greater weight be given to examining sources than non-examining sources, and that the Commissioner consider the same factors for review of any medical source opinion (e.g., the treatment relationship, the nature of that relationship, supportability, consistency, and specialization). Neither Dr. Finnerty nor Dr. Meyer examined the Plaintiff, which ordinarily would entitle their opinions to less weight than the treating/examining psychiatrist. Plaintiff complains that the ALJ committed reversible error by relying upon Drs. Finnerty and Meyer, because the consultants failed to review Dr. Wu's complete treatment records from the relevant time period, submitted to the ALJ as Exhibit 9F.

Dr. Finnerty specifically referenced only Exhibit 1F, which contained Dr. Wu's original 1999 diagnostic assessment and clinical records from Plaintiff's more recent years of treatment. Based upon the time gap in the records before him, Dr. Finnerty opined: "Apparently claimant was lost to treatment for some years and returned to

13

therapy in 1/06, as this is the date of subsequent records." (Tr. 217). As discussed, however, clinical records were later submitted, together with Dr. Wu's mental RFC form and opinion letter, that made clear that Plaintiff had not had any lapse in treatment.

In *Blakley*, the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." *Id.*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). However, the *Blakley* court reversed because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Id.*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)). Under *Blakley*, then, an ALJ may choose to credit the opinion of even a non-examining consultant who has failed to review a complete record, but he should articulate his reasons for doing so. If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis*.

As illustrated by the discussion of the records that were not reviewed by the consultants here, this case does not require reversal under *Blakley*. Even though the consulting psychologists did not have the benefit of Plaintiff's complete clinical records, those records were wholly consistent with the consultants' opinions. The ALJ clearly reviewed the entire record, citing to the relevant treatment notes and providing good reasons for crediting the opinions of the consulting psychologists over the unsupported

14

opinions of Dr. Wu. The ALJ's opinion could alternatively be affirmed because substantial evidence supports the non-disability finding, and any error was harmless.

### 2. Evaluation of Plaintiff's Credibility

As her second claim of error, Plaintiff argues that the ALJ unfairly evaluated her credibility, by rejecting Plaintiff's testimony that her depression was disabling. The ALJ wrote:

> Regarding activities of daily living, the claimant reported eating, reading, talking on the phone, and trying "to make some type of personal improvement."…She reported wearing the same clothes for several days, bathing only if she is going out, and indicated that she needs verbal encouragement to take care of personal needs and grooming…She reported being capable of preparing food on a weekly basis, but testified that …she rarely performs household chores…
>
> As for social functioning, the claimant testified at the hearing that she used to play golf, go to restaurants, and shop, but now rarely leaves her home…[and is] essentially isolated from other people. She reported talking on the phone and occasionally visiting with a friend…She reported feeling uncomfortable, threatened, and stressed around others, including family and friends and described herself as "more introverted."

(Tr. 16).

The ALJ also referenced Plaintiff's husband's testimony that she had been unable to recover from her family problems, and unable to cope after she was terminated from her job several years prior to her disability onset date. The ALJ referenced specifically his third party function report. Nevertheless, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of" her depression were "not credible to the extent they are inconsistent with" the RFC determined by the ALJ. (*Id.*). "The claimant's testimony concerning the presence

15

of incapacitating discomfort and associated functional limitations was not fully credible." (*Id.*).

The ALJ articulated his consideration of multiple factors in assessing Plaintiff's credibility, as required by the regulatory framework, but found the "objective medical evidence of record" to be inconsistent with Plaintiff's subjective claims of disability. That medical evidence included Dr. Wu's assessment of relatively high GAF scores during the relevant period, and her descriptions of Plaintiff as "neat, clean, alert [and] cooperative," with good insight and judgment. The ALJ found Dr. Wu's contemporaneous clinical assessments to be inconsistent with Plaintiff's years-later testimony at the hearing that she was (and continues to be) so disabled by her depression that she isolates herself from other people and has been essentially unable to function on a daily basis due to family stress. (Tr. 17). The ALJ also noted inconsistencies between Plaintiff's written disability application concerning her activities of daily living and her hearing testimony, which appeared to exaggerate her limitations. (*Id.*). In addition, and as discussed above, the clinical records of Plaintiff's treating psychiatrist and of her therapist do not support a disabling level of depression during the key period at issue - prior to December 31, 2002. During that period, Plaintiff was complaining to her psychiatrist that her life seemed to be "on hold" because she was essentially caring for elderly parents full-time (Tr. 287), while at other times she was pursuing her own floral business, taking courses, working with a personal trainer and nutritionist, and working part-time as a sales representative.

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence.  *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 392.  It is clear to the undersigned that the ALJ considered the record as a whole, including but not limited to objective and clinical records, Plaintiff's testimony, and reported daily activities, in assessing Plaintiff's subjective reports of incapacitating depression during the relevant disability period.  The ALJ's determination of credibility is therefore upheld based on the record in this case.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB be **AFFIRMED** because it is supported by substantial evidence in the record as a whole, and that this case be **CLOSED.**


    */s Stephanie K. Bowman*
    Stephanie K. Bowman
    United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CATHERINE LOUISE AUSTIN,　　　　　　　　　　Case No. 1:12-cv-728

　　　　Plaintiff,　　　　　　　　　　　　　　　　　Barrett, J.
　　　　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.
　　v.

COMMISSIONER OF SOCIAL SECURITY,

　　　　Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).